May it please the court, William Kopany on behalf of the appellant Mr. Reda, the issues in this case seem to me to really are better addressed sort of as clusters rather than trial by a combination of things that happened and the government has argued that nothing was wrong with anything that happened. But in our opening brief before the decision of a different panel of this court in the Prang case, the appellant here pointed out that there wasn't any evidence prior to the expression of opinion by Agent Keelan to the defendant that the agreement that was going to be entered into was either inappropriate or illegal. In the Prang case, the panel relied heavily on the fact that prior to the meeting between Agent Keelan, who was the undercover agent in the case, I know you've heard four other cases which are facts intensive, so I don't mean to dwell on facts that are in the briefs. Keelan was the undercover agent, Reda was the defendant or the target, and prior to that meeting, to a similar meeting in the Prang case, E.H., who was also a witness in this case, had a conversation with the target and told him this is inappropriate and illegal, this deal that you're going to be talking to Keelan about, to the undercover agent about. We don't have any similar evidence in this case. Do we need any? I'm sorry? Do we need any? How could it have been viewed in any other way? Well, Your Honor, it could be viewed in another way because this is a small cap stock case. The way that people in penny stock companies raise money is often by paying high commissions, up to 50%, for investors. And this was a 50% deal that was being presented to him. In the Prang case, pardon me, it was a 50% deal plus a 10% kicker that there was going to be extra money going back to the target. But in this case, Keelan presented this as, I'll give you double the money and half of it comes back to me. But isn't that the point? It comes back to me. It doesn't come back to anybody else. Well, Your Honor, this person is representing himself to the appellant as the hedge fund manager, the person that invests for the hedge fund. And I would agree, pardon me, I would agree, Your Honor, that that evidence would be sufficient for a jury to conclude the guilt of the appellant. And you'll notice we have not raised the sufficiency of the evidence issue in this appeal. But that doesn't mean that it's permissible for Keelan to express his opinion that what Rita knew was that it was a crime and that he had the intent to commit the crime. And in the Prang decision, the court said these kinds of opinions, which are admittedly dangerous because they can sway a jury to reach a conclusion without evidence, are only admissible if they're, quote, rationally based. And the rationally based discussion in Prang cited to the record of E.H. telling the defendant that this was illegal and inappropriate. But isn't the problem still that even, and I don't know about small cap offerings, so I'll take your word on that certainly, but isn't the crucial difference the following? Possibility one, we'll sell you the stock for $0.50 on the dollar. Possibility two, we'll sell you the stock for $0.10 on the dollar and you give 50 of it back to me. The former sounds like, you know, maybe powerful marketing inducement. The latter sounds, on the face of it, like impropriety, doesn't it? Well, Your Honor, I think so, but that's based on my experience and background. But the government presented no evidence that Mr. Rita was sophisticated and had the kind of background that would make it seem improper to him. Well, I'm not sophisticated and it seems improper to me. Your Honor, that's almost impossible for me to agree with, but I don't want to be disrespectful. But what I'm trying to communicate is that it wasn't necessary, but it was potentially prejudicial for the government to say, not only is this the deal, but here's why the defendant knew he was committing a crime even though no one told him that. And so that's the first cluster of issues in the case. And I think that, unless there's other questions, we've adequately briefed it. I think the appellant's position is clear. Your questions, Your Honor, imply that you may disagree that there needs to be some rational basis before a government witness can tell the jury that the defendant knew this was a crime and had the criminal intent required. But we didn't see any authority that said it's allowed just because the government wants to present it without what the prank called a rational basis, which was personal knowledge or personal information about the history and background of the person the government agent is talking to. And someone told him it's a crime. Someone told him it's fraud. Someone told him it's inappropriate or illegal. And the agent who expresses the opinion knows that in prank. The government points at pages 5 and 6. Just as a factional matter, I may not have this fact correct, but I thought there was a reference to prior to the face-to-face meeting between Keelan and Rita, there's a prior recorded conversation between them which was played to the jury. Isn't that correct? It is. And it's recorded on pages 5 and 6 of the government's brief. And it doesn't have the person who is having the conversation, the EH person. It doesn't have him saying what he said in prank, which is this is an inappropriate and illegal deal. It has much different language, which is the reason that we are arguing that notwithstanding prank, which was decided after we filed our opening brief here, notwithstanding prank, I think the case is distinguishable because this case doesn't have that factual predicate that allows this kind of an opinion to go to the jury without the prejudice that we've alleged. The purpose of that call to sort of put Rita on notice, what the nature of the proposition will be to him, and it has to be kept confidential, those kind of things. There's certainly the suggestion in that pre-conversation that this is not a straightforward deal and it's got some parameters that it's important that he understand before he actually meets face-to-face. Your Honor, if you mean it's an illegal deal, I would say the answer is no. If you mean it's not a straightforward deal, I would say it depends on what the definition of straightforward deal is. We're talking about a person that has never been charged with a crime, never been accused of fraud, and with regard to which the government didn't present evidence of any sophistication in this kind of investment raising. In other words, it could be that it was unusual and therefore there was something that smelled bad about it. And really that's the argument the government makes later in their brief. But the question that I'm raising is, should the government have had the advantage in persuading the jury of the guilt of this man of having the agent, who after all the jury would have viewed as an expert, questions of expert versus lay opinion evidence under the rules aside, but the jury would have viewed this man as an expert about this kind of a deal, telling them this is what he understood, this is what he knew, and this is what he meant by our conversation. And yes, it's clear that the purpose of the prior two communications with the defendant were to tell him something about the deal. But none of the evidence that the government has cited in their brief, and I invite the court's attention to pages five and six of the appellee's brief because they quote it, none of it says what happened in Prine, which is he was told it was an illegal or inappropriate deal. He was just told how it would work. And it might have seemed unusual to him, or it might not. But the government didn't establish that it would have. I think I have only a couple of minutes left on my argument before rebuttal. I'd like to save five minutes for rebuttal. May I do that? Well, ordinarily you ask for it up front. I apologize. So we compromise and say three minutes? Your Honor, whatever you like. So you still have three minutes to go here. Thank you. Oh, I see. On the question of the sentencing, it seems to me that the government has conceded error, conceded that it led the district court into error and claimed that no remand or resentencing is necessary because it can tell this court what the correct factual findings should be given that there was value in the restricted stock, even though it persuaded the district court that there wasn't any value. And I would ask this court to reject that conclusion for three reasons. First, district courts make factual findings, not circuit courts, particularly when there was an erroneous factual finding at the behest of the government below. Second, in the prime case, the panel explained how there are two different strands of fraud, one of which is where you just try to cheat someone and get their money and give them nothing. The other is where you overcharge them, and there is something of value conferred. From the discussion in Prang, and based on common sense, a district judge could conclude that when you overcharge someone, it's a different category of fraud, and this district court might have imposed a lower sentence because it should be remembered the district court departed here. And thirdly, the mere fact that there was some Excuse me, when you say departed, I mean granted a variance. So it was a variance, not a formal departure. Yes, I apologize, Your Honor. Sorry. But the mere fact that there was some value conferred may have persuaded the district court that a lower sentence should have been imposed in granting a variance. And there's no way for this court to know the answer to those things, nor does the appellant concede that the government's calculations are correct. In other words, the government posits why the guidelines would not have been different. But that's a decision for the district court to make in the first instance, now that the government has conceded that it misled the district court into finding that there was zero value in this. But if you prevail on this point, I mean there's a possibility that the government has a number of arguments and factual bases that it can present to the district court at resentencing. And there's some risk to your client, isn't there? Well, Your Honor, if what you're saying is the district court might take a whole new look at sentencing from the top to the bottom and conclude a higher sentence is appropriate, I think so. You do think so? Sure. I mean, because it depends on how the loss calculation is. I'm not sure the government wouldn't be stopped from arguing a higher amount than they put in their brief to this court. No, in terms of the, well, I don't know about that. I don't either, but I would rather take that risk than to not give the district court the opportunity to make the determination of the appropriate sentence knowing the correct value of the stock rather than having been persuaded it had zero value. I don't mean this to be flippant. I mean it to be advice. I assume you either have or will discuss that possibility with your client. Thank you, Your Honor. Thank you. I don't know if I did save any time, but if I did, I'll. You did. Thank you. Three minutes. You're free not to use it. Judge Howard, may it please the Court, Mark Quinlivan on behalf of the United States. Let me begin with the last issue raised, the intended loss calculation, because in our view the defendant is not entitled to any credits against loss under the plain terms of the guidelines, but this Court doesn't need to reach that issue because there is evidence in the record about what the common shares of the first global stock was on both dates in question, and even if the defendant were given credit for the common shares rather than the restricted shares of stock, it's clear that you would end up with the same enhancement under the guideline because the loss would be between $70,000 and $120,000. But let me begin with the guideline argument because the guideline, it's application note 3E1, and it says that credits against loss, a defendant is entitled to money's return prior to the detection of the offense. And the guideline separately, of course, defined the term offense to mean the offense of conviction and any relevant conduct, and the relevant conduct guideline in turn says that relevant conduct includes acts taken in preparation for the offense of conviction. In this case, the defendant took numerous acts in preparation for the offense of conviction prior to when he mailed the $320,000 restricted shares of stock to the undercover agent. During the in-person meeting with Special Agent Keelan, he brought a stock purchase agreement that had been left blank with the relevant shares as he had been instructed to do the day earlier by EH. He agreed to the deal with the agent, including agreeing to give the 50% kickback to the agent. Those all occurred the day before he mailed the $320,000 shares to the undercover agent. And so I would suggest under the plain terms of the guidelines, the offense was detected prior to when that was sent to the agent. But isn't that only true because it's a sting operation? You know, Judge Howard, it's a good point, and I've been thinking about that very question, and the question whether the Sentencing Commission was aware of this possibility when it drafted this particular application note. And I guess my answer would be, first off, we know that the Sentencing Commission was thinking about sting operations generally because in the very same guideline, in the definition of intended loss, it gives sting operations as an example of loss that is unlikely or impossible to occur, but nonetheless would constitute intended loss. So the Commission certainly was aware of sting operations in general when it drafted this guideline. Was it aware of how it would apply in this specific instance? I think it's impossible to say. I think, of course, this Court engages sometimes in a dialogue with the Sentencing Commission and identifies issues that maybe the Sentencing Commission should take a second look at. But at the end of the day, I think this Court's duty is to apply the guideline as written. It very well may decide that this issue is something that the Sentencing Commission does need to explore. Let me ask you this. So let's say this wasn't a sting operation. And at some point, the SEC or some regulatory agency stopped trading in this. So I'm guessing they became essentially worthless, ultimately. Actually, the record shows that the stock actually retained value even after the defendant was arrested. So I'm talking about beyond that? Yes, certainly. At some point, they would become worthless. If the district court committed a legal error based on what we later said in Frange, why wouldn't we – the district court has lots of discretion in terms of how to come up with a reasonable estimate. Why wouldn't we just open it back up for the court? It may be that you're right, that you can count the whole amount because you look at a period earlier in time. Or it may be that the government gets to say, actually, we should look at the value of the stock at the latest possible moment. Because the government never got anything back. I'm assuming the government didn't go out and sell the stock. That's right. I would have two answers, Judge Howard. The first is that, again, I don't think it needs to be sent back because this isn't an exercise in engaging in court of appeals fact-finding. It's an exercise in applying the guideline, in our view, as it's written. And I think that this court – But if the district court judge thinks the value was only half, maybe it would have varied lower. Well, that may be, Judge Howard. But I think this first – to begin with, this is a claim of procedural error in terms of how the guideline was applied. And this isn't a case where we don't know what the value of the stock was because there was evidence introduced at trial. And we've included it in our appendix. It's Exhibit 51 at trial. And it lists the date of the common shares of the stock for all of the relevant dates in question. And so, again, even assuming that the defendant might be entitled to credits against loss, if you calculate out $320,000 times .00055, which was the price on June 30th, that only gets him a subtraction of approximately $17,000. The resulting loss is $89,400. It's still well north of the baseline of $70,000 that triggers the enhancement under 2B.1.1.E. And I would suggest it would be different. I would entirely agree if we did not have that evidence in the record, if the government were trying to rely or ask the court to take judicial notice of what the stock price would be, I would agree that that would be something that would be inappropriate. But we have evidence introduced at trial as to the stock prices of the common shares on every date in question. And, once again, the common shares, of course, have more value than the restricted shares. And yet, even if you gave them full credit for the common shares of stock, the day he sent those shares to the undercover agent doesn't get him to a change in the guideline calculation. Just briefly on the Rule 701 question, I think my friend's primary argument to attempt to distinguish prong is that there was no evidence in this case that the defendant going into the meeting had any knowledge that it was going to be a fraudulent deal. Judge Lopez, as you alluded to, that's not the case. The day before, there was a recorded call between E.H. and the defendant, during which E.H. said, amongst other things, that the undercover agent had a bunch of nominee companies that you send the money back to to try to hide it so that it's kept away from the accountants. He also said that this money is going back directly to him. It's not to be shared with any of his partners. And the defendant, during that conversation, didn't express any disquiet or confusion about what that meant. And with respect to the suggestion that he was an unsophisticated businessman, I think what the record does show is that he headed two different companies that were trading on the OTC exchange. At the time of the offenses of conviction, he was spearheading a $200 million bond offering. So the suggestion that he was some unsophisticated businessman who didn't understand the terms, again, I think that's a jury question, but I don't think the record supports that. Counsel, you make a very broad argument in your brief that because the law enforcement officer here was personally involved in the transaction for that reason alone, if I understand your argument, he should not be considered an expert witness. Now, if I understand your argument correctly, that does seem to be unduly broad. I mean, there could be transactions far more complicated than this, and hence, in order to gain the jury's understanding of what's happening, there would be a need to explain to them in sophisticated terms what's going on, so that the law enforcement officer, although personally involved, could also, and hence in part a fact witness, could also be an expert witness. I mean, we have situations like that where law enforcement officers are testifying in a dual capacity. You're not excluding that possibility, are you? By the nature of the argument that you're making. No, Judge Lopez, and I didn't mean, I don't think our brief suggests that a law enforcement agent testifying, a special agent Keelan did, could never be offering any form of expert testimony. It rather was that in the circumstances of this case, this was permissible lay opinion testimony, because he was giving both his own explaining what he meant by certain phrase that he was saying to the defendant, and then also giving his rationally based view of what he thought the defendant understood those terms to mean. So no, we were not suggesting anything greater than this was lay opinion testimony in the circumstances of this particular case. Court has no further questions. We'll rest on our briefs. Thank you. I appreciate your Honor's invitation for me to not take a few moments. Not at all. But I'd like to make a couple of points. First, the language that's quoted by the government at page five of its brief refers to nominee companies. There isn't any evidence that Mr. Ritti even knew what a nominee company was, or why that would lead you to think there was something improper about this deal. Secondly, I quote in the reply brief at page nine of our reply brief what Kalin said. He said that people involved in criminal activity don't talk bluntly or candidly, and white-collar criminals don't say illegal stock deal. He was giving his expert opinion based on his general knowledge of this area of crime, not his lay opinion based on his personal knowledge of Mr. Ritta in the case. And so I think that your Honor's question about the government painting with a broad brush reveals the fact that in this case, because of the lack of real personal knowledge of this agent of Mr. Ritta, they needed to paint with a broad brush in order to contend that this lay opinion fits within the prying lay opinion rationale or holding. And finally, the government stood up and started to address the last issue first, and there was evidence in the record of what the stock was worth on various dates. And yet the district court didn't reach the conclusion that the stock was worth any of those figures. So if the government isn't asking this court to make a factual finding, I don't know what it's doing. What you do when you ask a court to make a factual finding is point to evidence and ask the court to agree with you. In this case, the government made an argument to say, ignore the evidence and agree with me that the stock is worth nothing. Now that Prang has come out, the government is saying, well, this court should reach that conclusion, because these numbers, after all, are in the record. I submit that if the district court knew that it was wrong to conclude that there was value in the stock that was conveyed, it may have reassessed, as Judge Howard suggests, it may reassess the entire approach to sentencing. Counsel, I thought the government's argument was that the only evidence of stock value in the record, even if your client were to get full credit for it, it would still yield the same guideline. That is the government's argument, but it's not necessarily what the district court would conclude, Your Honor. And if the district court were to reevaluate the entire approach to sentencing, it isn't clear that it would even consider the $75,000 transaction that never occurred to be within the intended loss. It's just impossible to tell what the district court will do on remand in making factual findings about what the guideline sentence is. And as I previously argued, those differences, whatever they are, might affect how much the district court varies. Thank you.